Good morning. Gerald Brandon appearing on behalf of Curtis Somoza, the appellant. And I'd like to address my comments this morning with respect to why the district court abused its discretion in not liberally applying the fair and just reasons standard. And I would like to... In not doing what? In not liberally applying the fair and just reasons standards and denying Mr. Somoza's motion to withdraw his plea. I would like to note in this regard that this circuit has recognized that inadequate legal advice, even without a showing of prejudice, is a fair and just reason for granting such a motion. And what I'd like to do in addressing the inadequate legal advice issue is I'd like to set the scene, set the stage, so to speak, with respect to what happened during the week preceding the guilty plea. The record shows that Somoza was conflicted about whether to plea during the time that Attorney Robinson represented him. He changed his mind a number of times. He questioned the adequacy of the investigation that was conducted. He questioned whether a complete forensic accounting had been completed. He requested pro se status. He repeatedly requested the substitution of counsel. And on the day he pled, Attorney Robinson represented him to the court that he was pleading conditionally. In his mind, in Somoza's mind, he was pleading conditionally. Somoza specifically asked to speak. Well, let me start on October 15th, which is a week before the trial. There was a status of compensating. He asked to proceed pro se. The judge denied him a continuance, denied his request, and he withdrew his request to proceed pro se, realizing that he was between a rock and a hard place. Meanwhile, on the 21st, which is the day before he pled, there was a big discussion. He wanted to substitute his attorney out. The court found that there was no sufficient conflict to do that. Somoza, he specifically asked to speak with another attorney regarding his options, and he specifically stated that his questions about pleading had to do with both law and fact regarding appellate and post-conviction issues. And here's where the inadequate legal advice comes in. Attorney Robinson, when he became aware that he was going to be the target of an ineffective assistance of counsel motion, and in face of the repeated substitution requests by Somoza, he decided he could no longer advise Somoza. And he told the court at least three times during the days leading up to the plea that, I cannot, I'm not going to advise him any further about his appellate and or post-conviction options. Somoza's, the court, conflated that and addressed only the issue of whether he was advised regarding his ability to bring, to file a 2255 label that his attorney is ineffective for not filing a dismissal motion based on the negligent or inadvertent. So before, so he was thinking about 2255s? Yeah, well he asked, yeah. He was looking into the future. And the court said, and the court addressed only that issue and asked, and every time Robinson was asked, he said, well, I'm not going to advise him regarding his 2255 possibility and his appellate possibilities. At that point, had you been through about four attorneys and four or five continuances at that point? That's correct. He had, Mr. Somoza was a difficult client and, but I think he was a difficult client. Difficult? Yeah, I mean, there's no question about that. But there is a question about whether he received the advice that he was entitled to just before he pled. Now Robinson, because of what he faced, he was conflicted at this point. Now I'm not saying he was conflicted to the point where the court should have agreed to a substitution, but conflicted with respect to the totality of circumstances that defines the context of his plea withdrawal motion. So maybe Somoza was, he was thinking of the future. He was thinking of us. And he was thinking of issues on appeal. He should not appeal? No. Yeah, exactly. He should not appeal. And he was making a record. Right. Is a defendant entitled to have the advice of counsel with respect to his defenses and options on appeal before he pleads? If he is, Somoza was left without representation for those very questions the day before he pled. And when he said to the court, the court, of course, characterized it as, oh, all you want to know is the odds of your winning a 2255. The court limited. The odds of winning on what? On a 2255 based on failure to file a dismissal motion by the attorneys or failure to investigate, file a dismissal motion. The court, but Robinson didn't limit his characterization to a 2255. He said every time, appellate and or post-conviction options. So Somoza, you know, realistically, you know, he was still confused. He said, Your Honor, no, it's not just about odds. I really have some questions about the facts and the law that I would like to speak to a lawyer about. Robinson at this point had informed the court, clearly informed the court, that he was not going to further advise his client on any of these issues. Okay. Yeah. So he had to proceed to plead without having the advice of his counsel. His counsel's conduct was influenced by the conflict that arose because of their relationship and because of Somoza's intention to challenge his conduct in a 2255 at some future date. And I think that's a fair and just reason, I mean, within the context of this case, for granting his motion. Now, you know what the court said? He said, Your Honor, I want to speak to somebody. He said, I'm not going to appoint you advisory counsel at this point. I'm going to give you a pleading that was submitted to me discussing the Strickland standards. The what standards? The Strickland standards. Oh, yeah. Yeah. He said, and you can read it and decide for yourself the odds, basically. That's what the court did. He refused to appoint advisory counsel and gave him. He didn't address the appellate questions that Somoza may have had, which Robinson said, I cannot advise him any longer on. He just said, Here's a pleading that somebody submitted to the court. It adequately sets out the Strickland standards. You can read it. In other words, no representation, just decide for yourself, in effect. I think under the liberal policy that's supposed to govern withdrawal motions, I think this qualifies as a fair and just reason, within the context, within the total context of this case, as a fair and just reason for his withdrawal motion. For his what? A fair and just reason for the withdrawal of his plea. His plea withdrawal motion. Okay. So that was denied. That was denied. Then he pled guilty. Then he pled guilty. With respect to his confusion and the conflict he had with Robinson, as a side note, I would just like to point out that Robinson's comments were fairly confusing, you know, with respect to the investigation, the forensic financial investigation he conducted. And so that was one reason that fueled Somoza's confusion.   I'm going to stop. Yes. Okay. You want to take your time, sir. Okay. I'll reserve a couple minutes. Yes. Thanks. Your Honors, may it please the Court, my name is Jill Feeney. I'm going to be addressing the conviction issues this morning, and my colleague Ruth Essentially, in the government's view, with respect to the claims regarding conviction, this case is about a defendant who didn't like the fact that his lawyer was not willing to file a motion to dismiss his indictment. His lawyer had determined that he didn't have a good faith basis for filing that motion, and the defendant was unhappy with that. This Court has long held that such decisions, strategic decisions about filing motions and the like, are within the purview of counsel, and that disputes over strategy don't even warrant substitution of counsel. And defendant has attempted to take what was a dispute over strategy, over a motion that he went and filed, and tried to manufacture the existence of a conflict that would warrant him being able to withdraw his guilty pleas. The defendant, it's clear from the record, was pleased with the representation of his attorney, except for the one issue over which they had to dispute, the strategic issue of filing the motion. Defendant said that on the record during the pretrial conference on October 15th, when he initially stated that he wanted to proceed pro se, and then backed off that, and agreed with the district court judge that his attorney was hardworking and was representing him well, and agreed that he wanted Mr. Robinson to represent him. And again, when he pled guilty on October 22nd, the defendant said under oath, except for the strategic issue, except for the motion issue, I am very pleased with Mr. Robinson. I've been able to discuss with him everything, even whether I should go ahead and go to trial, and I'm happy with his representation. The only thing the defendant wasn't advised on when he pled guilty, the only thing, and it's clear on the record, was the merits of any potential ineffective assistance of counsel claim that he might want to bring in the future. And there's no right, however, to have advice on the merits of an ineffective assistance of counsel claim. The district court was under no obligation to provide him with a new lawyer. Here, when the defendant pled guilty, unlike the McTiernan case, he knew exactly what he was giving up. He had been advised that his only recourse going forward with respect to the issue of this computer evidence that he claimed was destroyed was to file an ineffective assistance of counsel claim. He pled guilty knowing that, and he still has the ability to file his ineffective assistance of counsel claim. Now, with respect to specifically the motion to withdraw the guilty pleas, it has to be a fair and just reason, not in existence at the time of the guilty plea. And here, under an abuse of discretion standard, it's clear that the court's findings were not clearly erroneous. He was, the district court found clearly that the defendant understood that he would not be able to withdraw his guilty pleas or attack his guilty pleas on direct appeal. And he cited to, again, what happened on October 21st, the first day of trial, when defendant indicated that he wanted to plead guilty, but that he wanted to preserve his rights to an ineffective assistance of counsel claim. At that point, the court went over with him in detail what his rights were, and that anything that he wanted to pursue would have to be done through an effective assistance of counsel claim after appeal. And Mr. Robinson indicated on the record that he had also so advised the defendant. And he was advised again by the court during his guilty plea of the same thing the second day. So it was not clearly erroneous for the court to find that this defendant had correct legal advice. There is no dispute about that. And that when he pled guilty, he knew exactly that he was going to have to pursue any claim regarding this motion in the form of a collateral attack that would come later. Okay. You want to save five minutes for your partner? Absolutely, Your Honor. Good. May it please the Court, Assistant United States Attorney Ruth Hinkle on behalf of the government. I am addressing the sentencing issues in this case. The record is clear in this case that the 300-month sentence imposed by the district court was both procedurally and substantively reasonable. The defendant has claimed that the district court committed four procedural errors. Two had to do with the imposition of enhancements, the victim enhancement and the 22-level loss enhancement. And the defendant also claims the court erred in not granting a downward variance for overstatement of seriousness of offense and failed to consider unwarranted sentencing disparity. In this case, the district court committed no clear error in imposing the victim enhancements and the loss enhancements. There was an extensive financial analysis which analyzed all records for 68 bank accounts, and then 41 of those bank accounts were specifically relevant to determining who invested, whether they were paid back, and how much they ultimately lost. And in this case, the government submitted a declaration from an FBI financial analyst. Are we talking about 65 million? Pardon me? There was a total of 68 million brought into the case. After payments, we gave the defendants credits for repayments to Ponzi payments back to investors. The loss was approximately $45 million. How much? $45 million. Oh, okay. In the event, detailed financial analysis which described exactly how the analyst had inputted records, detailed records from bank accounts, and created spreadsheets to determine who was an investor and how much money they lost. In addition, she then met with the co-defendant who was cooperating, Coberley, and Coberley was in charge of all the finances in the scheme with Mr. — with Defendant Somoza. And Coberley was personally familiar with the names of each and every investor in this case. So the government had also submitted to the court lists of investors as confirmed by Coberley, who had firsthand knowledge of exactly who the investors were. And then the government made additional summary charts or summary exhibits. It was a 34-page spreadsheet which contained each and every investment from every investor, and then that was reduced to a two-page spreadsheet, which is at the government supplemental excerpts of record at 917. And that particular spreadsheet showed exactly the total amount per investor of who lost money and who in fact sustained actual losses, which is the standard for determining if someone is in fact a victim. And with this information before it, the court found by clear and convincing evidence, which was a standard higher than what it needed to utilize, the district court found clear and convincing evidence that 63 people sustained an actual loss, totaling approximately $45 million. Therefore, given the detailed record before the court, there was no procedural error in how the court determined both the number of victims and the loss. Defendant also has argued that the district court failed to adequately address his argument at sentencing that he was entitled to a downward variance for overstatement of seriousness of the offense. And defendant's argument there was that the government had failed to prove loss. But because the district court had looked at the detailed financial analysis presented by the court, it necessarily considered and rejected defendant's argument that the loss amount overstated the seriousness of the offense. Defendant also claims that the court did not consider unwarranted sentencing disparity. This argument specifically was not raised in the district court. Nonetheless, the Treadwell case from the Ninth Circuit, which came out after the sentencing in this case, I think is directly on point for a large number of reasons, not only factually but legally. The Treadwell case says that if loss is correctly calculated, the district court is entitled to rely upon a guidelines range in determining that there was no unwarranted sentencing disparity. And factually, the reason why Treadwell is directly on point is that in that case, it also involved a Ponzi scheme, like this case, where the defendants had misrepresented charitable aspects of the Ponzi scheme, justice in this case. And the loss amount in Treadwell was almost exactly the same in this case, $44 million. And in that case, in Treadwell, that defendant had been given a 300-month sentence, just like defendant Somoza here. So I think factually and legally, Treadwell is directly on point. And I'm just about out of time. Does the court have any further questions? Thank you. Thank you. I just want to. That was a nervous laugh. I want to. On October 21, in the face of Somoza's repeated requests for counsel, Attorney Robinson said, I've explained to him that I'm not going. This is a quote at page 5 of the reply brief. I'm not going to advise him on whether or not he has any type of meritorious position on ineffective assistance of counsel. I don't believe he does. And I am not going to advise him on whether he should enter a plea of guilty on hopes that he would prevail on that kind of argument on appeal or collateral attack. And he went on, his attorney went on and said to the court, so what I'm asking the court to consider is for the purpose of satisfying Mr. Somoza on whether or not he should exercise his right to go to trial or enter a guilty plea that another attorney be appointed to speak with him in the morning to advise him on the likelihood of prevailing and or the merits of raising that argument on appeal or a collateral attack. So that if Mr. Somoza wishes to give up his right to a trial, he does so intelligently. So here we have his own lawyer admitting that he can't advise him anymore and that to ensure his plea is voluntary, an advisory counsel should be appointed for the purpose of consultation. Somoza then said, the court said, well, all he is, he just doesn't know what the odds are. That's not something I'm going to appoint a lawyer for. And Somoza said, it's not about what the odds are for. It was actually to clarify the points and the point of law. And that's what I guess what the other question was. I want to actually speak to someone directly regarding the facts and law. I understand what you said, but it didn't go exactly to the questions I was asking. So was it fair to then, is it fair and just reason, is this comprised of fair and just reason to allow him to withdraw his plea under the circumstances that he was without counsel just before he pled and had questions about his options?
judges: Davidson, Pregerson, Bybee